IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT CAMPITELLI | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PLYMOUTH ROCK ASSURANCE CORP. | : | NO.  22-4422 |

## <u>MEMORANDUM</u>

**Padova, J.**                                                             **August 8, 2023**

Plaintiff has brought the instant lawsuit pursuant to Title 42, Pennsylvania Consolidated Statutes § 8371 and state common law, alleging that Defendant acted in bad faith and breached his insurance contract by first failing to compensate him for all of the damages he suffered as a result of water damage to his insured property and by subsequently refusing to renew his insurance policy.  Defendant has moved to dismiss Plaintiff's claims in part, to strike portions of Plaintiff's claims, and for a more definite statement with respect to the remainder of Plaintiff's claims.  For the reasons that follow, we grant the Motion in part and deny it in part.

## I.    FACTUAL BACKGROUND

The Second Amended Complaint alleges the following facts.  Plaintiff owns a property in Frackville, Pennsylvania (the "Property").  (2d Am. Compl. ¶ 4.)  The Property was insured by a Homeowners Insurance Policy issued by Defendant (the "Policy").  (<u>Id.</u> Ex. A at 2 of 8.)  The Policy covered the dwelling (Plaintiff's home), personal property, and loss of use.  (<u>Id.</u> ¶ 6.)  The Policy also included "Additional Limited Coverage for 'Fungi', Wet or Dry Rot, Or Bacteria in the amount of $10,000.00 and an aggregate Sub limit Of Liability for 'Fungi', Wet Or Dry Rot, Or Bacteria of $50,000.00."  (<u>Id.</u>, Ex. A at 6 of 8.)  The Policy defines "Fungi" as "any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi."  (<u>Id.</u> ¶ 7, Ex. A at 6 of 8.)

On November 6, 2021, the roof of the dwelling leaked, causing significant water damage. (Id. ¶ 8.)  Plaintiff reported the loss to Defendant as required by the Policy.  (Id. ¶ 9.)  On May 2, 2022, before the Property was repaired following the November 6, 2021 water leak, a leak from a water main caused additional water damage to the Property.  (Id. ¶ 11.)  Plaintiff also reported this second loss to Defendant.  (Id. ¶ 12.)  These two water leaks caused damage to Plaintiff's dwelling and its contents and resulted in a serious mold infestation.  (Id. ¶ 14, Ex. B.)  In addition, Plaintiff developed serious breathing issues and sinusitis as a result of the mold infestation, which made the Property virtually uninhabitable.  (Id. ¶¶ 15-16.)  Plaintiff had to leave the Property, live in a hotel, and expend large sums of money for medicine and medical attention.  (Id. ¶¶ 16, 61.)

Defendant inspected the Property and prepared an estimate of the damages for which it agreed it was responsible, including damage to the basement, hallway, kitchen, living/dining area, and the rear bedroom of the dwelling, as well as some of Plaintiff's personal property.  (Id. ¶¶ 18-20, Ex. B.)  Defendant agreed that it was responsible for $11,791.06 in damages.  (Id. ¶ 21.)  Plaintiff also obtained an estimate for mold remediation for the Property in the amount of $21,130.04.  (Id. ¶ 22, Ex. C at 2 of 2.)  The Property remains virtually uninhabitable and Plaintiff has been advised that the damage is so serious that the dwelling should be replaced.  (Id. ¶¶ 23-24.)  The Policy is supposed to cover the increased living expenses of the insured if the Property becomes uninhabitable.  (Id. ¶ 25.)  However, Defendant only agreed to pay for Plaintiff to stay in a hotel for one week.  (Id. ¶ 26.)  As a result, Plaintiff has to live in the dwelling even though it is dangerous and virtually uninhabitable.  (Id. ¶ 27.)  In addition, even though Plaintiff has complied with all of the terms of the Policy, Defendant refused to renew the Policy, which expired on September 24, 2022.  (Id. ¶ 28.)  Defendant did not tell Plaintiff why it

cancelled his insurance coverage.  (Id.)  Plaintiff has been unable to obtain new insurance for the Property.  (Id. ¶ 29.)

The Second Amended Complaint asserts two claims for relief against Defendant pursuant to Pennsylvania law.  Count I asserts a claim for bad faith in violation of 42 Pa. Cons. Stat. § 8371 and Count II asserts a claim for breach of contract under common law.  Defendant asks us to dismiss Count I to the extent it seeks compensatory damages and Count II to the extent it seeks damages for pain and suffering, mental anguish, humiliation, and Plaintiff's medical expenses.  Defendant also asks us to order Plaintiff to provide a more definite statement of (1) his claim in Count II that Defendant breached the contract by failing to renew the Policy; (2) his bad faith claim in Count I; and (3) whether the Second Amended Complaint asserts separate breach of contract and bad faith claims with respect to each of his insurance claims.  Defendant further asks us to strike Plaintiff's claim in Count I that Defendant violated public policy and legislative intent in connection with its alleged failure to pay Plaintiff all of what he was owed under the Policy.  Plaintiff concedes that he is not entitled to the payment of his medical expenses for the personal injuries he suffered as a result of the mold infestation and agrees that his request for medical payments in Count II should be dismissed.  (See Pl.'s Ans. (Docket No. 10) at 7 of 23.)  Plaintiff opposes the Motion in all other respects.

II.    **MOTION TO DISMISS**

    A.    Legal Standard

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents."  Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v.

Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). "We accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Shorter v. United States, 12 F.4th 366, 371 (3d Cir. 2021) (citing Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)). However, we "are not bound to accept as true a legal conclusion couched as a factual allegation." Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Under this standard, a complaint need not plead all of the facts necessary to prove each element of the plaintiff's claims; it need only allege enough facts to "raise a reasonable expectation that discovery will reveal evidence of [each] necessary element." Martinez v. UPMC Susquehanna, 986 F.3d 261, 266 (3d Cir. 2021) (alteration in original) (quoting Fowler, 578 F.3d at 213). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

B.    <u>Count I</u>

Defendant moves to dismiss Plaintiff's request for compensatory damages in connection with his claim for bad faith pursuant to 42 Pa. Cons. Stat. § 8371 on the grounds that compensatory damages are not available pursuant to § 8371.  Pennsylvania's bad faith statute provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371.  Paragraph 40 of Count I of the Second Amended Complaint alleges that, as a result of Defendant's "bad faith actions . . . [D]efendant is liable for [P]laintiff's damages as set forth above," which include damage to the Property and its contents, mold remediation, hotel expenses, and damages arising from the cancellation of the Policy. (2d Am. Compl. ¶¶ 18-29, 32-35, 40.)  The ad damnum clause of Count I "demands damages including punitive damages."  (<u>See</u> <u>id.</u> at 4 of 8.)  Thus, Count I appears to request compensatory damages in addition to punitive damages.

The United States Court of Appeals for the Third Circuit has explained that "Section 8371 does not provide for the award of compensatory damages, which, if sought, must be recovered based on other theories." <u>Wolfe v. Allstate Prop. & Cas. Ins. Co.</u>, 790 F.3d 487, 498 (3d Cir. 2015) (citing <u>Birth Ctr. v. St. Paul Cos.</u>, 787 A.2d 376, 386 (Pa. 2001)).  The bad faith statute "only permits recovery of punitive damages, interest, and costs." <u>Id.</u> at 499.  However, the assertion of a "claim under section 8371 does not affect [the plaintiff's] ability to obtain compensatory damages, if they exist, under a breach of contract claim.  'The statute does not

prohibit the award of compensatory damages.  It merely provides an additional remedy and authorizes the award of additional damages.'" Id. at 499 n.10 (quoting Birth Ctr., 787 A.2d at 386).  We conclude, accordingly, that Plaintiff cannot recover compensatory damages in connection with his bad faith claim in Count I of the Second Amended Complaint.  We therefore grant the Motion to Dismiss as to Plaintiff's request for compensatory damages in Count I of the Second Amended Complaint and that request is dismissed.

     C.    <u>Count II</u>

    Defendant moves to dismiss Plaintiff's request for damages for pain and suffering, mental anguish, humiliation, and related expenses in connection with his breach of contract claim in Count II of the Second Amended Complaint on the grounds that damages for emotional distress are generally not recoverable for a breach of contract and Plaintiff's personal injuries were not foreseeable at the time the parties entered into the contract.  Count II of the Second Amended Complaint alleges that Plaintiff suffered breathing issues and sinusitis as a direct result of Defendant's breach of contract because Defendant failed to pay for remediation of the mold in the Property and failed to pay for his stay in a hotel after one week, so that he was forced to return to the Property even though it was contaminated with mold.  (2d Am. Compl. ¶¶ 59-60.) The Second Amended Complaint further alleges that, as a result of these breaches of the insurance contract, Plaintiff "has suffered physical pain and mental anguish and humiliation," has spent large sums of money for medical care, and has been unable to participate in his usual daily activities and duties.  (Id. ¶¶ 61-63.)

     1.    <u>Emotional distress damages</u>

    "[D]amages for emotional distress are not ordinarily allowed in actions for breach of contract." <u>Rittenhouse Regency Affiliates v. Passen</u>, 482 A.2d 1042, 1043 (Pa. Super. Ct. 1984).

"There are only two exceptions."  Id.  "The first is where the emotional distress accompanies bodily injury. This usually takes the form of an action in tort. The second exception occurs where the breach is of such a type that serious emotional disturbance is a particularly likely result."  Id. (citing Restatement (Second) of Contracts § 353 (1981); Carpel v. Saget Studios, Inc., 326 F. Supp. 1331, 1334 (E.D. Pa. 1971); Emerman v. Baldwin, 142 A.2d 440, 447 (Pa. Super. Ct. 1958); Gefter v. Rosenthal, 119 A.2d 250 (Pa. 1956)).[1]  The Pennsylvania Superior Court has noted the following common examples of the types of contracts whose breach is particularly likely to result in serious emotional disturbance:  "'contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death.'"  Id. n.1 (quoting Restatement (Second) of Torts § 353, cmt. a)).  "'For a case to fall within the exception, not only must the subject matter be fundamental, but defendant's conduct must be something close to outrageous.'" Rodgers v. Nationwide Mut. Ins. Co., 496 A.2d 811, 815 (Pa. Super. Ct. 1985) (quoting Harrison v. Nationwide Mut. Fire Ins. Co., 580 F. Supp. 133, 135-36 (E.D. Pa. 1983)); see also DeHart v. HomEq Servicing Corp., 47 F. Supp. 3d 246, 254 n.7 (E.D. Pa. 2014), aff'd, 679 F. App'x 184 (3d Cir. 2017) ("Generally speaking, damages for mental suffering are not recoverable in a breach of contract case, even when the damage is foreseeable. Although an exception might be recognized for extreme cases, it is only applicable where the conduct is so outrageous as to be actionable as the tort of intentional infliction of emotional distress." (citing Restatement (Second) of Contracts § 353; Rittenhouse Regency Affiliates, 482 A.2d at 1043; Rodgers, 496 A.2d at 815-16)).

---

[1] We note that Plaintiff has not asserted a tort claim in connection with his alleged emotional distress.

Plaintiff argues that we should deny the Motion as to this argument because the Second
Amended Complaint specifically alleges that Defendant's failure to pay a covered claim resulted
in Plaintiff having to move back into an uninhabitable dwelling, which is particularly likely to
result in serious emotional disturbance.  An ordinary residential insurance policy is not the type
of contract whose breach is particularly likely to result in serious emotional disturbance.  See
Rittenhouse Regency Affiliates, 482 A.2d at 1043 n.1 (citation omitted).  Consequently, we must
examine whether Defendant's "conduct is so outrageous as to be actionable as the tort of
intentional infliction of emotional distress."     DeHart, 47 F. Supp. 3d at 254 n.7 (citations
omitted).  In order to state a plausible claim for intentional infliction of emotional distress, a
complaint must allege the following four elements:  "(1) the conduct must be extreme and
outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress;
and (4) the distress must be severe." Jordan v. Pennsylvania State Univ., 276 A.3d 751, 775 (Pa.
Super. Ct. 2022) (quotation omitted).  Extreme and outrageous conduct is "so outrageous in
character, so extreme in degree, as to go beyond all possible bounds of decency, and to be
regarded as atrocious, and utterly intolerable in a civilized society.'" LiCausi v. Allentown Sch.
Dist., Civ. A. No. 21-957, 2023 WL 4471686, at *6 (E.D. Pa. July 11, 2023) (quoting Swisher v.
Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)); see also Jordan, 276 A.3d at 775 (same).  The
Pennsylvania Courts have found the following conduct sufficiently outrageous to constitute
intentional infliction of emotional distress:  "'(1) killing the plaintiff's son with an automobile
and then burying the body, rather than reporting the incident to the police; (2) intentionally
fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to
the press false medical records diagnosing the plaintiff with a fatal disease.'" Doe v. Abington
Friends Sch., Civ. A. No. 22-14, 2022 WL 16722322, at *5 (E.D. Pa. Nov. 4, 2022) (quoting

Dull v. W. Manchester Twp. Police Dep't, 604 F. Supp. 2d 739, 756 (M.D. Pa. 2009)); see also Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (same).

We conclude that the conduct alleged in the Second Amended Complaint, i.e., the failure to pay a covered claim that resulted in Plaintiff having to move back into an uninhabitable dwelling, is insufficiently outrageous to constitute intentional infliction of emotional distress under Pennsylvania law.  Accordingly, we grant the Motion to Dismiss with respect to Plaintiff's request for emotional distress damages in connection with his breach of contract claim in Count II of the Second Amended Complaint and that request is dismissed.

        2.    Pain and suffering

Defendant argues that we should dismiss Plaintiff's request for damages for pain and suffering in connection with his breach of contract claim because Plaintiff's personal injuries were not reasonably foreseeable at the time the parties entered into the Policy.  The Second Amended Complaint alleges that, as a result of Defendant's breach of contract by failing to pay for Plaintiff's hotel expenses, Plaintiff was forced to return to the dwelling and, as a result of his return, suffered breathing and other related respiratory issues as well as physical pain.  (2d Am. Compl. ¶¶ 60, 63.)  The Second Amended Complaint further alleges that, as a result, Plaintiff has spent large sums of money for medicine and medical attention.  (Id. ¶ 61.)

Under Pennsylvania law, where one party has breached a contract, the other party may recover, "'whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty.'"  Ferrer v. Trustees of Univ. of Pennsylvania, 825 A.2d 591, 610 (Pa. 2002) (quoting Taylor v. Kaufhold, 84 A.2d 347, 351 (Pa. 1951)).  The Amended Complaint

does not allege any facts that would show that Plaintiff's breathing and other respiratory injuries and physical pain, are the type of damages that "would naturally and ordinarily result from" a failure to pay damages under an insurance policy or "were foreseeable and within the contemplation of the parties at the time they made the contract." Id. See also Accurso v. Infra-Red Servs., Inc., Civ. A. No. 13-7509, 2016 WL 1273878, at *3 (E.D. Pa. Apr. 1, 2016) (determining that plaintiff, who sought damages for the decline in his health that allegedly resulted from his being fired and unable to obtain health insurance, could not recover for pain and suffering as a result of a breach of contract because plaintiff did not "articulate how the deterioration of his health was foreseeable and within the contemplation of the parties at the time the contract was negotiated"). Accordingly, we grant the Motion to Dismiss as to Plaintiff's request for breach of contract damages for pain and suffering.

III.    **MOTION FOR A MORE DEFINITE STATEMENT**

A.    Legal Standard

"Under Rule 12(e), a defendant may move for a more definite statement '[i]f a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading.'" Thomas v. Independence Twp., 463 F.3d 285, 301 (3d Cir. 2006) (alterations in original) (quoting Fed. R. Civ. P. 12(e)). "The Rule 12(e) 'motion shall point out the defects complained of and the details desired.'" Id. (quoting Fed. R. Civ. P. 12(e)). "A motion for a more definite statement is the proper way for a defendant to request plaintiff 'to lay out details that enable the defendant[] to respond intelligently and the court to handle the litigation effectively.'" Anand v. Shapiro, Civ. A. No. 19-600, 2019 WL 1333878, at *3 (E.D. Pa. Mar. 25, 2019) (quoting Chapman v. Yellow Cab Coop., 875 F.3d 846, 849 (7th Cir. 2017)). Nonetheless, "'[m]otions for more definite statement are highly disfavored and are rarely granted

by the court.  Such motions will only be granted if a pleading is unintelligible, making it virtually impossible for the opposing party to craft a responsive pleading or simple denial.'"  <u>Id.</u> (quoting <u>Taylor v. Cox</u>, 912 F. Supp. 140, 143 (E.D. Pa. 1995)); <u>see also</u> <u>Frazier v. Se. Pennsylvania Transp. Auth.</u>, 868 F. Supp. 757, 763 (E.D. Pa. 1994) (stating that motions for more definite statement under Rule 12(e) are "generally disfavored" and are "used to provide a remedy for an unintelligible pleading rather than as a correction for a lack of detail" (citation omitted)). "However, '[w]hen presented with an appropriate Rule 12(e) motion for a more definite statement, the district court shall grant the motion and demand more specific factual allegations from the plaintiff concerning the conduct underlying the claims for relief.'"  <u>Henderson v. Edens Corp.</u>, Civ. A. No. 09-1308, 2014 WL 7008449, at *1 (E.D. Pa. Dec. 11, 2014) (alteration in original) (quoting <u>Thomas</u>, 463 F.3d at 301).

   B. <u>Count II -- Breach of Contract for Failure to Renew the Policy</u>

    Defendant asks the Court to order Plaintiff to file a more definite statement of his claim, in Count II, that Defendant breached the contract by failing to renew or cancelling the Policy. Defendant asks, in the alternative, that we dismiss this portion of Plaintiff's breach of contract claim pursuant to Rule 12(b)(6).  The Second Amended Complaint alleges that, "[a]lthough [P]laintiff has complied with all terms of the Policy, Defendant has now refused to renew [P]laintiff's policy which expired on September 24, 2022 without providing a reason for cancellation of coverage."  (2d Am. Compl. ¶ 28.)  The Second Amended Complaint further alleges that "[P]laintiff has been unable to secure insurance on his property."  (<u>Id.</u> ¶ 29.)  The Second Amended Complaint also alleges that, as a result of Defendant's breach of contract, "[P]laintiff was not paid required benefits including . . . Compensation as a result of defendant cancelling [P]laintiff's contract of insurance."  (<u>Id.</u> ¶ 54.)

Defendant argues that the Second Amended Complaint is unclear with respect to this claim because it does not specify whether Defendant failed to renew the Policy or cancelled it. Defendant also argues that the Second Amended Complaint is unclear because it does not specify which provisions of the Policy pertaining to the renewal or cancellation of the Policy Defendant allegedly breached.

"Under Pennsylvania law, 'three elements are necessary to plead a cause of action for breach of contract:  (1) the existence of a contract, including its essential terms[;] (2) a breach of the contract; and[] (3) resultant damages.'"  Doe v. Univ. of Scis., 961 F.3d 203, 211 (3d Cir. 2020) (alterations in original) (footnote omitted) (quoting Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016)).   The Second Amended Complaint alleges the existence of a contract between the parties, it alleges that Defendant breached that contract by either failing to renew or by cancelling the Policy, and it alleges that Plaintiff was damaged by Defendant's failure to renew or cancellation of the Policy.  (2d Am. Compl. ¶¶ 28, 29, 54.)  However, it does not allege the essential terms of the Policy relating to renewal or cancellation of the Policy.   We conclude that the allegations of the Second Amended Complaint are not so unintelligible that it would be virtually impossible for Defendant "to craft a responsive pleading or simple denial."  Anand, 2019 WL 1333878, at *3 (quotation omitted).  However, while Defendant could prepare responses to these allegations, we conclude that they fail to state a breach of contract claim upon which relief could be granted because they fail to identify the essential terms of the Policy that Defendant allegedly breached. See Doe, 961 F.3d at 211 (quotation omitted).  Accordingly, we grant the instant Motion to the extent that it seeks dismissal of Plaintiff's breach of contract claim with respect to the nonrenewal or cancellation of the Policy pursuant to Rule 12(b)(6).

C.    Count I – Failure to Allege the Elements of a Bad Faith Claim

Defendant contends that we should order Plaintiff to file a more definite statement of his bad faith claim in Count I pursuant to Rule 12(e) because Count I fails to allege the elements of such a claim.  Defendant did not ask, in the alternative, that we dismiss Count I pursuant to Rule 12(b)(6) on this basis.

"Under Pennsylvania law, to prevail in a bad faith action pursuant to 42 Pa. C.S.A. § 8371, a plaintiff must establish: '(1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim.'"   Lopez v. Selective Ins. Co., Civ. A. No. 20-1260, 2020 WL 3265148, at *1 (E.D. Pa. June 17, 2020) (quoting Rancosky v. Washington Nat'l Ins. Co., 170 A.3d 364, 377 (Pa. 2017)).  The Second Amended Complaint alleges that Defendant acted in bad faith by refusing to pay Plaintiff's losses under the Policy even though Plaintiff complied with all of the terms of the Policy.  (2d Am. Compl. ¶¶ 31-32.)  The Second Amended Complaint also alleges that Defendant acted in bad faith by failing to make payments that it had acknowledged it was required to make.  (Id. ¶ 33.)  The Second Amended Complaint further alleges that Defendant refused to pay for Plaintiff's living expenses when he could not remain in the dwelling as required by Coverage D(1) of the Policy.  (Id. ¶¶ 34-35.)  The Second Amended Complaint also alleges that Defendant acted in bad faith by refusing to negotiate in good faith even though Plaintiff had provided it with all required documentation and that Defendant did not have a reasonable basis for refusing to pay Plaintiff under the Policy.  (Id. ¶¶ 36-38.)  We conclude that the Second Amended Complaint intelligibly alleges the elements of a bad faith claim and we deny the Motion to the extent that Defendant asks us to order Plaintiff to file an amended complaint with respect to Count I on the ground that Count I fails to allege the

elements of a bad faith claim pursuant to § 8371.  See Frazier, 868 F. Supp. at 763 (stating that Rule 12(e) "is used to provide a remedy for an unintelligible pleading rather than as a correction for a lack of detail" (citation omitted)).

    D.    <u>Counts I and II</u>

Defendant asks us to order Plaintiff to file a more definite statement of both his bad faith claim in Count I and his breach of contract claim in Count II, specifying whether those Counts assert separate claims relating to each of Plaintiff's losses.  The Second Amended Complaint alleges that Plaintiff suffered two distinct and separate losses, i.e., the roof leak on November 6, 2021, and the water main leak on May 2, 2022.  (2d Am. Compl. ¶¶ 8, 11.)  Nonetheless, the Second Amended Complaint appears to assert only one claim of bad faith and one claim of breach of contract against Defendant.  Defendant asks us to order Plaintiff to specifically state whether he asserts one bad faith claim and one breach of contract claim encompassing Defendant's conduct with respect to both losses, or one bad faith claim and one breach of contract claim with respect to each specific loss.

Exhibit B to the Second Amended Complaint is an estimate, prepared by Defendant and dated May 23, 2022, after the water main leak, of the work that would need to be done to repair the Property.  (See 2d Am. Compl. ¶ 14, Ex. B.)  Count I alleges that Defendant acted in bad faith by "refusing to negotiate in good faith to resolve the issues not included in the estimate attached as Exhibit 'B' to this Complaint despite plaintiff providing all required proofs and documentation including additional living expense."  (Id. ¶ 36.)  The Second Amended Complaint also alleges that Exhibit B includes the damage from both the roof leak and the water main leak.  (Id. ¶ 14.)  Since Plaintiff's bad faith claim is based on Defendant's conduct concerning Exhibit B and Exhibit B was prepared by Defendant regarding Plaintiff's damages

from <u>both</u> the November 6, 2021 and May 2, 2022 water leaks, it appears clear that Count I asserts a claim of bad faith encompassing Defendant's conduct with respect to both of Plaintiff's losses.   Thus, notwithstanding Plaintiff's failure to specifically state in the Second Amended Complaint that Count I asserts one claim of bad faith arising from both the November 6, 2021 and May 2, 2022 water leaks, we cannot conclude that Count I of the Second Amended Complaint is so unintelligible that it would be virtually impossible for Defendant to "'craft a responsive pleading or simple denial'" to the factual allegations contained therein.   <u>Anand</u>, 2019 WL 1333878, at *3 (quoting <u>Taylor</u>, 912 F. Supp. at 143).

Count II alleges that Plaintiff's losses are covered by the Policy's "Limited Fungi, Wet or Dry Rot, or Bacteria Coverage."   (2d Am. Compl. ¶¶ 45-47.)   Count II further alleges that Defendant breached the parties' contract by "fail[ing] to negotiate in good faith and pay amounts for which it was responsible despite being provided all proofs by [P]laintiff."   (<u>Id.</u> ¶ 53.)   Count II also refers specifically to Defendant's estimate of the amount it was responsible to pay to Plaintiff, i.e., Exhibit B, and Plaintiff's estimate for mold remediation, Exhibit C.   (<u>Id.</u> ¶¶ 55-56.) Exhibit C is dated June 16, 2022, after the water main leak, and appears to provide an estimate for remediation of all damage caused by mold after both the roof leak and the water main leak. (<u>Id.</u>, Ex. C.)   Accordingly, notwithstanding Plaintiff's failure to specifically state in the Second Amended Complaint that Count II asserts a single breach of contract claim arising from Defendant's conduct with respect to both his November 6, 2021 and May 2, 2022 losses, we cannot conclude that Count II of the Second Amended Complaint is so unintelligible that it would be virtually impossible for Defendant to "'craft a responsive pleading or simple denial'" to the factual allegations contained therein.   <u>Anand</u>, 2019 WL 1333878, at *3 (quoting <u>Taylor</u>, 912 F. Supp. at 143).   We therefore deny the Motion with respect to Defendant's request that we

order Plaintiff to file a more definite statement of both his bad faith claim in Count I and his breach of contract claim in Count II, specifying whether those Counts assert separate claims relating to each of Plaintiff's losses.

## IV.  MOTION TO STRIKE

A.  <u>Legal Standard</u>

"Pursuant to Federal Rule of Civil Procedure 12(f), '[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" <u>Zucal v. Cnty. of Lehigh</u>, Civ. A. No. 21-4598, 2023 WL 3997963, at *13 (E.D. Pa. June 14, 2023) (quoting Fed. R. Civ. P. 12(f)).  "Motions to strike function 'to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'" <u>Mitchell v. Cmty. Educ. Ctrs., Inc.</u>, Civ. A. No. 14-5026, 2015 WL 4770652, at *11 (E.D. Pa. Aug. 11, 2015) (quoting <u>McInerney v. Moyer Lumber & Hardware, Inc.</u>, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)).  "'The standard for striking under Rule 12(f) is strict and . . . only allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken.'" <u>Zucal</u>, 2023 WL 3997963, at *13 (quoting <u>Johnson v. Anhorn</u>, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004)); <u>see also</u> <u>Ford-Greene v. NHS, Inc.</u>, 106 F. Supp. 3d 590, 615 (E.D. Pa. 2015) (same (quoting <u>Steak Umm Co., LLC v. Steak 'Em Up, Inc.</u>, Civ. A. No. 09-2857, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009))).  Consequently, "[m]otions to strike are generally disfavored by courts and will be denied unless the allegations 'have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" <u>Mitchell</u>, 2015 WL 4770652, at *11 (quoting <u>Natale v. Winthrop Res. Corp.</u>, Civ. A. No. 07-4686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008)).

16

B.     References to Legislative Intent and Public Policy

Defendant moves to strike the references to "legislative intent" and "public policy" in Count I of the Second Amended Complaint.  Count I of the Second Amended Complaint makes three references to the terms "legislative intent" and "public policy":

> 40.     As a result of the bad faith actions, breach of contract and violation of legislative intent and public policy, as hereinbefore set forth, said [D]efendant is liable for [P]laintiff's damages as set forth above.

> 42.     As a further result of the outrageous bad faith actions and violation of legislative intent and public policy, as hereinbefore set forth, said [D]efendant is liable to [P]laintiff for punitive damages.

> 43.     As a further result of the bad faith actions, breach of contract and violation of legislative intent and public policy of [D]efendant, Plymouth Rock, said defendant is liable to [P]laintiff for court cost and attorney [sic] fees.

(2d Am Compl. ¶¶ 40, 42-43.)

Defendant argues that the Second Amended Complaint's allegations mentioning legislative intent and public policy should be stricken because they are insufficiently specific and are also unrelated to Plaintiff's bad faith claim.  Defendant has not, however, shown that these allegations may cause it prejudice, or that they may confuse the issues in this case.  Accordingly, we deny the request that we strike the words "legislative intent" and "public policy" from paragraphs 40, 42, and 43 of the Second Amended Complaint.  See Mitchell, 2015 WL 4770652, at *11 (stating that motions to strike "will be denied unless the allegations have no possible relation to the controversy **and** may cause prejudice to one of the parties, **or** if the allegations confuse the issues in the case" (emphasis supplied) (quotation omitted)).

## V.     CONCLUSION

For the foregoing reasons, we grant the instant Motion in part and deny it in part.  We grant the Motion with respect to Defendant's request that we dismiss the following:   (1)

Plaintiff's request for compensatory damages in Count I of the Second Amended Complaint; (2) Plaintiff's request for damages for pain and suffering, mental anguish, humiliation, and related medical expenses in connection with his breach of contract claim in Count II of the Second Amended Complaint; and (3) Plaintiff's claim in Count II that Defendant breached the contract by failing to renew or by cancelling the Policy.  We deny the Motion with respect to the following:  (1) Defendant's request that we order Plaintiff to provide a more definite statement of the bad faith claim in Count I because the Second Amended Complaint fails to adequately allege such a claim; (2)  Defendant's request that we order Plaintiff to provide a more definite statement specifying whether Counts I and II assert separate bad faith and breach of contract claims with respect to each of Plaintiff's losses; and (3) Defendant's request that we strike the words "legislative intent" and "public policy" from paragraphs 40, 42, and 43 of the Second Amended Complaint.  An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.

18